# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

In re Application of:                    )
                                         )
Anna Aleksandrovna Sergeeva, *a natural*  )
*Person and Citizen of the Russian*       )     Case No.:  1:13-mi-101-SJC-RGV
*Federation*                              )
                                         )
                                         )

## TRIDENT CORPORATE SERVICES, INC.'S BRIEF IN SUPPORT
## OF ITS MOTION TO VACATE ORDER OR IN THE ALTERNATIVE,
## QUASH SUBPOENA TO DEPOSE GABRIELA PUGH

COMES NOW, Trident Corporate Services, Inc., ("Trident Corporate Services, Inc.") and files the following Brief in Support of its Motion to Vacate Order or in the Alternative, Quash Subpoena[1].

### Statement of Facts

The subpoenas at issue here emanate from a more than year-long dispute in the Russian Federation over the division of marital assets following the Sergeeva-

---

[1] Sergeeva also served a subpoena for documents.  Trident Corporate Services, Inc. served a timely Objection to the subpoena.  Among other bases for the Objection, Trident Corporate Services, Inc. noted that the subpoena seeks documents located outside the United States, which is not permitted under Section 1782, *See, In re Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007) ("[t]he bulk of authority … holds that for purposes of Section 1782(a), a witness cannot be compelled to produce documents located outside the United States"), and was unduly burdensome.  It is not clear whether Sergeeva intends to file a motion to compel with respect to that subpoena, but if so, Trident Corporate Services, Inc. reserves all objections.

Dubin divorce. *See* Affidavit of Dmitry Lovyrev attached to Sergeeva's Brief ("Lovyrev Affid.") at ¶ 11 (Sergeeva filed in April of 2012). In Russia, couples can divorce and then fight over property later. That is the case here.

Since her divorce, Sergeeva has engaged in a worldwide pursuit of her share of Dubin's assets by seeking discovery in the various venues in which she believes that Dubin had holdings such as the British Virgin Islands, Cypress, Latvia and others, including the Bahamas. Despite the fact that Dubin admitted to the Hamovnichesky court that he had an ownership interest in each of three companies, *see* Ex. 32 to Lovyrev Affid. at p.3, so that the court awarded Sergeeva an interest in each, *id.* at p.7, she continues to target Tripleton, a Bahamian company that Sergeeva also hopes to prove that Dubin owns so that she can get a half interest in it as well.

An *affiliate* of Movant Trident Corporate Services, Inc. called Trident Corporate Services (Bahamas) Limited, was Tripleton's registered agent. *Id.* Sergeeva acknowledges that Trident Corporate Services, Inc. and Trident Corporate Services (Bahamas) Limited are separate and distinct entities.

To pursue the foreign discovery, Sergeeva sought letters rogatory,[2] which issued from the Russian court to the various venues in which she sought discovery,

---

[2] "[A] *letter rogatory* is the request by a domestic court to a foreign court to take evidence from a certain witness." *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, n. 1 (2004) (quoting Harry L. Jones, *International Judicial*

including the Bahamas. After Sergeeva obtained an order permitting discovery in the Bahamas, a motion was filed to set it aside. To date, that motion remains pending so discovery currently is stayed.

Sergeeva also attempted to get evidence of Tripleton's ownership directly from Trident Corporate Services (Bahamas) Limited, instead of through legal discovery. Back in 2002, Sergeeva's brother, Grigoriy Sergeev ("Sergeev") became the sole director of Tripleton. *Id.* In 2008, however, Tripleton replaced Sergeev with a new sole director. Disingenuously claiming to still believe that he was the sole director, Sergeev stepped in to assist in his sister's property dispute by authorizing her counsel to seek documentation from Trident Corporate Services (Bahamas) Limited confirming that Dubin was Tripleton's beneficial owner. *Id.* A low level employee of Trident Corporate Services, Inc., Gabriela Pugh, responded on behalf of Trident Corporate Services (Bahamas) Limited that it could not help Sergeev as he no longer was a director. She indicated that Sergeev would need to contact the owner to fulfill his request. In response, Sergeeva's counsel represented to Pugh that Dubin was the owner, and based on that representation, Pugh agreed that that was whom he should contact. *See* Affidavit of Gabriela Pugh ("Pugh Affid.") (copy attached as Ex. A) at ¶¶ 10-12.

---

*Assistance: Procedural Chaos and a Program for Reform*, 62 YALE L.J. 515, 519 (1953).

Meanwhile, Tripleton submitted evidence to the Russian court that a man named Sergey Koshelenko is the beneficial owner of Tripleton, not Dubin. Sergeeva Brief at 8. Armed with this evidence, the court issued an order excluding Tripleton from the sphere of marital property that is subject to equitable division. *See* Lovyrev Affid. at ¶ 45.

The Sergeeva-Dubin divorce was final almost two years ago on December 22, 2011. Thus, Sergeeva could have pursued proper discovery in the Bahamas at any time over the last twenty or so months. Now, having failed to get information directly from Trident Corporate Services (Bahamas) Limited, and with the Bahamian discovery process stalled while the court considers the pending motion, Sergeeva contends that she suddenly has an immediate need to get the Bahamian discovery so that she cannot wait for the Bahamian court to rule. To end run the pending status in the Bahamas, Sergeeva filed the present Section 1782 motion in the United States, seeking to get indirectly what she has not yet been able to get directly. Sergeeva now seeks to take discovery of an American company in the hopes of procuring evidence of a Bahamian entity's ownership to use in her appeal. As detailed below, this quest fails for numerous reasons, not the least of which is the fact that this Court should not shoulder aside the Bahamian court in ordering Bahamas-centric discovery, especially when the Bahamian court is in the process of considering whether such discovery is proper. For myriad reasons, the order

granting Sergeeva's Section 1782 application is legally insupportable and should be vacated.

Argument and Citation of Authority

## I. U.S. COURTS WERE NOT INTENDED TO BECOME CLEARING HOUSES FOR REQUESTS FOR INFORMATION FROM COURTS AND LITIGANTS ALL OVER THE WORLD.

Sergeeva is attempting to use the fact of Trident Corporate Services, Inc.'s presence in this district as the bootstrap by which to get at information that is housed in a foreign country, namely, the Bahamas, in the offices of a separately incorporated, distinct entity: Trident Corporate Services (Bahamas) Limited. Section 1782's laces are neither that long nor that strong.

Noted Section 1782 commentator, Professor Hans Smit, the "dominant drafter"[3] of Section 1782, commented that American courts were not intended to "become clearing houses for requests for information from courts and litigants all over the world …." Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 SYRACUSE J. INT'L L. & COM. 1, 11 (1998). Section 1782 was not intended to

_____
[3] *In re Letter of Request from Crown Prosecution Service of United Kingdom*, 870 F.2d 686, 689 (D.C. Cir. 1989). The only U.S. Supreme Court decision to consider 28 U.S.C. § 1782 cited to Professor Smit 14 times. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

5

allow worldwide discovery simply because a company fortuitously has an office with an American connection.

The impact on multinational business of Sergeeva's position is extraordinary.  Illustrative of this point, Pepsico's website describes itself as a conglomerate of "22 iconic, billion dollar brands,[4]" including such well-known favorites as Lays, Seven Up, Lipton and Quaker.  It has a presence in thirty different countries outside the US.[5]  For decades, there was a Frito-Lay plant right here in the Northern District of Georgia.  If Sergeeva's assertion that she can obtain discovery from Trident Corporate Services (Bahamas) Limited merely because Trident Corporate Services, Inc. is in the Northern District of Georgia is correct, then a foreign litigant would have been entitled to get documents from Pepsico Arabia, Argentina, or Romania, let alone twenty-seven other sister companies, simply by serving a Section 1782 subpoena on the Frito-Lay potato chip plant on Peachtree Industrial Road.  There is no way that Congress, in trying to facilitate the ability of foreign litigants to obtain discovery in this country, meant to open the doors that wide to allow any foreign litigant to take discovery around the world merely because the target had an American affiliate.  If that were the case, foreign companies would be well advised to reconsider having U.S.

_____

[5] http://www.pepsico.com/Home/GlobalSites

operations, thereby avoiding exposing their non-U.S. locations to American discovery.

This case provides a real life example of the extremity of Sergeeva's position. There are dozens of Trident corporations in such far-flung locations as Mauritius, Dubai and the Seychelles.[6] There is no reason whatsoever that merely because Trident Corporate Services, Inc. happens to be located within the United States, litigants should be able to use that fact to conduct discovery into the Meridian Trust Company Ltd. in Nevis, Trident Trust Company (Luxembourg) Sarl in Luxembourg, Trident Corporate Services (Asia) Ltd. in Hong Kong, or any one of the other dozens of Trident companies. This is not a case in which a company is located in the United States but has offices worldwide. This is a case in which a litigant is trying to get discovery of a distinct foreign entity merely because there is some related entity has an American presence. Section 1782 does not permit such an outrageous result.

## II. EVEN IF SERGEEVA'S APPLICATION SATISFIED SECTION 1782'S MANDATORY REQUIREMENTS, THE INTEL DISCRETIONARY FACTORS STILL WARRANT ITS DENIAL.

Even if Sergeeva's Section 1782 application satisfied all of the express statutory prerequisites, the previously-issued discovery order should be vacated nonetheless. As the Supreme Court noted, "[w]e caution … that § 1782(a)

---

http://www.tridenttrust.com/jurisdiction_tcay.html#companies

authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to "interested person[s]" in proceedings abroad." *Intel Corp. v Advanced Micro Devices, Inc.*, 542 US 241, 264 (2004). Satisfaction of the statutory parameters merely means that a court has the power to grant the requested discovery. A host of other factors determine whether it should actually do so, including whether the application is a concealed attempt to circumvent foreign proof-gathering restrictions or the United States and the receptivity of the foreign tribunal to U.S. federal-court judicial assistance. *See In re Kivisto*, 2013 U.S. App. LEXIS 11851 at *6 (11th Cir. June 10, 2013). Each of these factors militates strongly against granting the application.

A.  This Court Should Respect The Bahamian Judiciary And Not Facilitate Sergeeva's Circumvention Of Foreign Proof-Gathering Protocols.

Sergeeva flatly admits that "Trident Atlanta is a separate and distinct legal entity, incorporated under the laws of the United States, from Trident Trust Bahamas, which is a party to the Bahamian discovery proceedings." Brief at 12. This assertion spawns the obvious question: If these are two separate and distinct entities, why seek discovery from the US corporation for information that the Bahamian company possesses? The answer is clear: Sergeeva is trying to circumvent the Bahamian legal system. Section 1782 does not allow this result.

Sergeeva named Tripleton in her lawsuit and contacted Trident Trust Bahamas over a year ago for ownership information, thereby evidencing that she was well aware of the need to procure the desired information from the Bahamian entity. It is difficult to fathom how Sergeeva now protests that she was surprised by the necessity of obtaining the ownership information only a month or so ago. The facts do not support this contention. To the contrary, what they indicate is that Sergeeva properly began her quest for discovery in the Bahamas by having the Russian court issue a Letter of Request to the Bahamian authorities but when that process stalled, she decided to circumvent it by tagging a U.S.-based, Trident affiliate with Section 1782 discovery. Unquestionably, this is the type of end run to which the *Intel* Court was referring.

"[A] perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis," *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 8255 at *64 (N.D. Cal. Jan. 17, 2013), and in fact should be a determinative factor here. Had Sergeeva timely began her quest to procure discovery from the Bahamas -- the actual repository of the information she seeks -- she likely would have had the information she desires by now. Because, however, the wheels of justice did not turn as she would have liked, she decided to bypass the Bahamian court system by means of Section 1782.

The Court should not countenance this end-run behavior as the recent decision in *In re Samsung*, 2013 U.S. Dist. LEXIS 10518 (N.D. Cal. Jan. 23, 2013), recognized. There, because Samsung had made the same discovery request in another forum as it had in a Section 1782 application, "out of respect for the Japanese tribunal before which a parallel request is currently pending," *id*. at *1, the U.S. court denied Samsung's discovery request until the other forum "has had an opportunity to decide the exact same request before it." *Id.*

Similarly, in *Application of Asta Medica, SA*, 981 F.2d 1 (1st Cir. 1992),[7] the court noted that "Congress did not seek to place itself on a collision course with foreign tribunals …." *Id.* at 6. If a litigant asked a foreign tribunal for discovery but was denied, "and the same information is located in the United States, the litigant may side-step that result by racing here and obtaining the information under Section 1782." *Id.* That would not be appropriate. "[F]oreign countries may be offended by the use of United States procedure to circumvent their own procedures and laws." *Id.*

The court in *In re Microsoft Corp.,* 428 F. Supp. 2d 188 (S.D.N.Y. 2006*)*, had similar concerns. There, the same discovery requests already were pending in a European Commission proceeding when Microsoft made its Section 1782 request in New York. The court noted that a grant of the requested discovery "would

_____

[7] The *Intel* Court disapproved *Asta Medica'*s imposition of a foreign discoverability requirement which is not relevant here.

constitute a clear circumvention of the Commission's procedures which the Supreme Court expressly prohibited in *Intel*." Thus, it declined to enforce the Section 1782 subpoenas.

The same issues obtain here. Discovery proceedings are underway in the Bahamas. For this court to insert itself into, and wholly sidestep Bahamian procedure, would be an affront to principles of judicial comity and likely offend the Bahamian court. As a result, this Court should decline to exercise its discretion under Section 1782 and vacate the order previously entered.

      B. <u>Russia's Suspension Of Judicial Cooperation With The United States, As Well As Its Status As A Civil Law State In Which Judges, Not Parties, Control Discovery, Both Evidence That Russia Is Not Likely To Be Receptive To American Judicial Assistance.</u>

The other *Intel* discretionary factor of import here is the foreign court's receptivity to American judicial aid. There are several reasons why this factor militates against the continuing validity of this Court's discovery order.

Sergeeva cites the fact that the Russian court issued four other Letters of Request as illustrative of Russia's likely receptiveness to American judicial assistance. Nothing could be further from the truth.

As the State Department website reflects, not only has the "United States has not accepted the Russian Federation's accession to the Hague Convention," *see* "Obtaining Evidence in Civil and Commercial Matters," State Department

Website,[8] but the Russian Federation has "unilaterally suspended all judicial cooperation with the United States in civil and commercial matters." *Id.* at "Service of Process." As the State Department further noted, all U.S. requests for judicial assistance to Russia in civil and commercial matters are returned unexecuted by the Russian authorities. *Id.* at "Obtaining Evidence."

Notably, the freeze in judicial cooperation is a one-way street. While Russian courts will not lift a finger to assist parties to American litigation, they are nevertheless authorized to issue letters rogatory to U.S. courts to obtain evidence or other judicial assistance from this country. Importantly, however, the decision to seek such aid is firmly in the control of the Russian courts. Individual litigants may not take matters into their own hands as Sergeeva is attempting to do here. That is, in the Russian civil law system, judges "are responsible for directing pretrial litigation in areas reserved for the parties themselves in common law systems." S. Willig, *Out of Service: The Causes and Consequences of Russia's Suspension of Judicial Assistance to the United States Under the Hague Service Convention*, U. PA. J. INT'L L., at 609-10 (2009). Indeed, Russia's freeze in judicial cooperation with the United States has been explained in part because "the

_____

[8] http://travel.state.gov/law/judicial/judicial_3831.html   *See also* Declaration by Edward A. Betancourt, Director of the Office of Policy Review and Inter-Agency Liaison in the Directorate of Overseas Citizens Services ("OCS") of the Bureau of Consular Affairs of the U.S. Department of State, posted on the State Department website at http://www.state.gov/s/l/16146.htm

gap between the two systems [US and Russia] is so wide and the potential for offense to [Russian] civil law judges by [American] common law litigators is so great …." *Id.* Russian judges who are used to regulating the discovery process themselves are quite unaccustomed to American-style discovery which is almost exclusively party driven and controlled.

Even beyond the fact that Russia requires "far more direct court participation in pre-trial service and evidence-gathering procedures than is common in the United States," *id.* at 610, Russian legislation affirmatively requires that requests for foreign judicial assistance be channeled through the court. As Russian Civil Procedure expert Anatoly Kleimenov explains, that Section 1782 allows Russian litigants to obtain discovery without seeking advance judicial permission is abhorrent to the Russian system. *See* Kleimenov Dec. at ¶ 42. In Russia, litigants cannot obtain judicially-assisted foreign discovery for use in Russian courts without first procuring letters rogatory or a Hague Convention letter of request from the Russian court. Thus, if Sergeeva seeks to gather evidence that is usable in a Russian court, she must use a letter rogatory. Failure to do so offends Russian procedure. *See id.*

In light of these differences, a Russian tribunal that is used to controlling the pretrial process will not be receptive to evidence that it did not authorize nor assist in procuring. Hence, this *Intel* factor also militates against this Court's exercise of

its discretion to permit the requested discovery.  The order previously entered should be vacated.

## III.  SERGEEVA'S DISCOVERY ATTEMPT IS FUTILE BECAUSE THE INFORMATION IS NOT WITHIN THE KNOWLEDGE OR CONTROL OF TRIDENT CORPORATE SERVICES, INC.

The deposition subpoena (and, for that matter, the document subpoena) is futile in any event.  It questions who the owner of Tripleton is but the putative deponent has no answer.   As her affidavit affirms, the subpoenaed deponent, Gabriela Pugh, the Human Resources Coordinator of Trident Corporate Services, Inc., does not now know and in fact, never has known who the beneficial owner of Tripleton is.  *See* Pugh Affid. at ¶¶ 12-13.  Although Sergeeva attempts to portray Pugh as having affirmed that it is Dubin, the evidence is uncontroverted that that is not the case.  *Id.*  In fact, Pugh's testimony is directly to the contrary.  She has no idea who owns Tripleton.  *See* Pugh Affid. at ¶¶ 12-13.  More than that, it would not matter what Pugh believed or understood anyway as it cannot change the fact of precisely who the owner is.  Statements by Ms. Pugh – a relatively low-level employee of Trident Corporate Services, Inc.'s Atlanta office – that Dubin is or is not the beneficial owner of Tripleton do not "make it so."

Ownership information is housed in the Caribbean at Trident Corporate Services (Bahamas) Limited.  It is Sergeeva's responsibility to seek it there, just as she already is in the process of doing.

## IV. THE APPLICATION FAILS TO SATISFY SECTION 1782'S MANDATORY "FOR USE" REQUIREMENT.

Pursuant to Section 1782, a district court may not grant the assistance requested unless four parameters are satisfied, including that the discovery sought is "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Sergeeva's request fails to satisfy this factor.

There is no dispute that the Russian action has ended and the Hamovnichesky court issued a final order determining that Dubin has no ownership of Tripleton. Sergeeva has appealed that final order and claims that she is entitled to use the evidence she hopes to gather through this proceeding in the appeal. Russian law does not support that quest. The Russian appellate courts accept new evidence only in one exceptional circumstance: when, for reasons *beyond the appellant's control*, it was *impossible* to obtain it in a timely fashion.

Sergeeva relies on Article 327.1 of the Russian Civil Code for the proposition that she can submit newly-obtained evidence in the appeal. In the original Russian, that provision states as follows:

> Суд апелляционной инстанции оценивает имеющиеся в деле, а также дополнительно представленные доказательства. *Дополнительные доказательства принимаются судом апелляционной инстанции, если лицо, участвующее в деле, обосновало **невозможность** их представления в суд первой инстанции по причинам, не зависящим от него, и суд признает эти причины уважительными*. О принятии новых доказательств суд апелляционной инстанции выносит определение.

Art. 327.1 Civil Procedure Code (emphasis added). *Sergeeva's* counsel translated this provision to mean that newly discovered evidence may be submitted in an appeal if the appellant simply was *unable* to procure it before. This is not true.

The operative word in Article 327.1 is *невозможность*. Whereas Sergeeva's counsel translated it to mean "unable," every Russian-English dictionary defines *невозможность* to mean "impossible." *See* THE OXFORD RUSSIAN DICTIONARY, Oxford Univ. Press (1995) (copy of relevant pages attached as Ex. C) (defining *невозможно* to mean "impossible" or "it is impossible"); O. S. Akhmanova et al., RUSSIAN ENGLISH DICTIONARY, Moscow Russian Language Publishers (1981) (copy of relevant pages attached as Ex. D) (defining *невозможно* as "it is impossible" or "it is impossible to discover"); V. Yanushkov et al., THE BUSINESSMAN'S RUSSIAN ENGLISH DICTIONARY, Minsk (1994) (copy of relevant pages attached as Ex. E) (same).

Likewise, the United Nation's WIPO Resources site contains the following translation of the operative excerpt from Article 327.1 which limits the introduction of new evidence on appeal to the rare situation in which:

a person participating in the case has substantiated the ***impossibility*** of adducing them in the court of the first instance for ***reasons beyond control***

thereof and the court finds these reasons sound. [9]

(emphasis added). Obviously, "impossibility" as a result of events beyond one's control is a far more stringent standard than mere "inability." Equally obvious, procuring the desired evidence was neither impossible nor beyond Sergeeva's control. To the contrary, she currently is gathering this evidence in the Bahamas; she simply needs to allow that court to address the pending motion.

Moreover, if Sergeeva had embarked on this quest in a more timely fashion, she likely would have the evidence by now. She sent Letters of Request to various other jurisdictions even before initiating the property dispute. Lovyrev Affid. at ¶ 13; 70-71 & Ex. 36. Yet, for whatever reason, she chose not to proceed similarly in the Bahamas. Lovyrev Affid. at ¶ 30. Section 1782 contains no exception to permit an end run around proper foreign process merely because the wheels of justice are not turning as quickly in the foreign jurisdiction as the applicant would like. It was neither impossible for, nor beyond Sergeeva's control to procure the evidence she seeks from proper Bahamian channels in a timely fashion. As a result, she will not be able to present new evidence (should she find any) on appeal and thus, this Application did not seek evidence for use in a foreign proceeding. As the court in *Euromepa, S.A. v. R. Esmerian*, Inc., 154 F.3d 24 (2d Cir. 1998), noted, "discovery certainly could not be 'for use in' the … appeal if that court does

_____

[9] http://www.wipo.int/wipolex/en/text.jsp?file_id=277039) (emphasis added).

not take and hear new evidence." *Id.* at 29. Moreover, "Section 1782 is designed to provide discovery in aid of foreign litigation, not to provide discovery to justify the reopening of already completed foreign litigation." *Id*. at 29. That is precisely what Sergeeva seeks to do here.

Sergeeva attempts to justify her delay in filing the Section 1782 application by asserting that she had "no reasonable expectation before [the Hamovnichesky Court hearing on] June 28, 2013" that she would need that evidence. Sergeeva Brief at 9; 16. This argument makes no sense.

The fact that Sergeeva named Tripleton as a defendant in the property dispute confirms that she has known she would need evidence as to Tripleton's ownership from the start. *See* Ex. 32 to Lovyrev Affid.. She affirmed this fact by obtaining a Letter of Request to the Bahamian government, albeit many months after beginning her information-gathering quest in other jurisdictions. Thus, this is not a case of impossibility. As stated by Russian Civil Procedure expert Anatoly Kleimenov, a party's "tactical decision … or mere impracticability does not suffice" in meeting the impossibility standard. *See* Kleimenov Dec. at ¶ 25. If Sergeeva does not succeed in obtaining evidence from the Bahamas in a timely fashion, it will not be because it was impossible; it was because she waited too

long. She made this choice and has to bear its consequence: the inability to present

Section 1782 evidence on appeal in Russia.

In a similar vein, the lack of a proceeding in which Sergeeva can present the evidence she seeks to gather moots this case and deprives this Court of subject matter jurisdiction. "The doctrine of mootness arises out of Article III of the United States Constitution, which limits the federal 'judicial power' to the adjudication of 'cases' or 'controversies.'" *Comision Ejecutiva Hidroelectrica Del Rio Lempa v. Nejapa Power Co*., LLC., 341 Fed. Appx. 821 (3d Cir. 2009). "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Thus, once an issue becomes moot, the court lacks the power to adjudicate it and any judgment previously issued will be vacated. *See id.* (vacating judgment after issue became moot).

This principle holds equally true in the context of Section 1782 applications. *See Comision Ejecutiva Hidroelectrica Del Rio v. Nejapa Power Co*., LLC., 341 Fed. Appx. 821 (3d Cir. 2009); *Euromepa, S.A. v. R. Esmerian*, 154 F.3d 24, 29 (2d Cir. 1998); *In re Ishihara Chem. Co.*, 251 F.3d 120, 125-27 (2d Cir. 2001). For example, in *In re Ishihara Chem. Co.*, 251 F.3d 120 (2d Cir. 2001),[10] Shipley and Ishihara were parties to a patent invalidity proceeding before the Japanese Patent Office. Ishihara applied for discovery in the United States under Section 1782 but

_____

[10] The *Intel* Court disapproved of *Ishihara* on grounds not at issue here.

while the court was adjudicating the application, the Japanese Patent Office issued a ruling. Once the foreign proceeding concluded, Shipley contended that "because the requested discovery is no longer needed 'for use in' a foreign proceeding, the petition – and these appeals – should be dismissed as moot." *Id.* at 122. The *Ishihara* court agreed.

The same result is warranted here. Much like in this country, the appellate record in Russia generally cannot be supplemented. While there is a limited exception for evidence that was impossible to obtain previously, those are not the facts of this case. Accordingly, because there is no pending proceeding that will entertain the evidence that Sergeeva seeks, it is not "for use" in a foreign proceeding and therefore this matter is moot. This Court should vacate its previous Order allowing the discovery to proceed.

Conclusion

For the foregoing reasons, non-party Trident Corporate Services, Inc. respectfully requests that the Court exercise its discretion, refuse the requested discovery and quash Sergeeva's subpoenas.

<u>Certificate of Compliance</u>

The undersigned herby certifies, pursuant to L.R. 7.1 that the foregoing document  was prepared in accordance with L.R. 7.1 using Times New Roman 14 point.

<u>/s/ Philip W. Engle</u>
Philip W. Engle

Respectfully submitted this 26th day of September, 2013.

<u>/s/ Philip W. Engle</u>
Philip W. Engle
Georgia Bar No. 248775
englelaw@comcast.net

230 Axworth Court
Roswell, GA 30075
Telephone:  770-653-1441
Fax:  678-952-0489

Certificate of Service

I hereby certify that I have this day served the foregoing **TRIDENT CORPORATE SERVICES, INC.'S MOTION TO VACATE ORDER OR IN THE ALTERNATIVE TO QUASH SUBPOENAS** on all other parties by causing a copy of the same to be filed electronically through the Court's ECF system to:

> Lisa R. Strauss
> strauss@bmelaw.com
> Fredric Bold
> bold@bmelaw.com
> Bondurant, Mixson & Elmore LLP
> 1201 West Peachtree Street NW
> Suite 3900
> Atlanta, GA 30329

This 26th day of September, 2013.

/s/ Philip W. Engle
Philip W. Engle
Georgia Bar No. 248775
englelaw@comcast.net